UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ALLSTATE INTERIORS, INC.,

              Plaintiff,         10 Civ. 2861

  -against-                   OPINION

UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA and
RAYMOND BRUGUERAS,

              Defendants.

------------------------------------X



A P P E A R A N C E S:

    Attorneys for Plaintiff

    THE PELLEGRINO LAW FIRM, P.C.
    43-39 21ST Street, #204
    Long Island City, NY   11101
    Gregory J. Gallo, Esq.

    Attorneys for Defendants

    O'DWYER and BERNSTEIN, L.L.P.
    52 Duane Street
    New York, NY   10007
    By:  Gary P. Rothman, Esq.

    DECARLO, CONNOR & SHANLEY, P.C.
    101 Constitution Avenue, N.W.
    Washington, D.C.   20001
    By:  Brian F. Quinn, Esq.

**SWEET, D.J.**

The plaintiff Allstate Interiors, Inc. ("Allstate" or the "Plaintiff") has moved under 28 U.S.C. § 1447 to remand this action against defendants United Brotherhood of Carpenters and Joiners of America (the "Union") and Raymond Brugueras ("Brugueras") (collectively, the "Union Defendants") and for attorneys' fees. Upon the conclusions set forth below, the motion is denied.

## Prior Proceedings

On March 11, 2010, Allstate commenced a lawsuit in New York State Supreme Court (Index No. 600637/10) against the Union Defendants in a complaint (the "Complaint") which alleged five counts of Tortious Interference with Prospective Contractual Relations, and one count each of Injurious Falsehood, Libel and Prima Facie Tort. Allstate also sought to enjoin the Defendants from committing the actions alleged in the various counts during the pendency of the lawsuit.

On April 1, 2010, the Union Defendants removed Plaintiff's lawsuit from state court on the basis of federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(b).

The Union Defendants in their Notice removing this action set forth authorities for this Court's jurisdiction based on Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187. The Notice attached several district court decisions in which removal by the Defendant Union itself or entities affiliated with it has been upheld. Adobe Drywall, LLC v. United Brotherhood of Carpenters and Joiners of America, Local Union No. 1506 et al., Case No. CV-08-2105-PHX-SRB (D.Ariz. 2008) (attached as Ex. 5 to Defendants' Notice of Removal); Alpha Theta of Alpha Delta Pi Building Ass'n v. Northwest Regional Council of Carpenters, 2009 U.S. Dist. Lexis 92407 (W.D.Wash September 23, 2009).

The Complaint alleged that Brugueras is the Financial Secretary of the Union (Complaint ¶ 3), that Allstate submitted bids to perform work for Galaxy General Contracting ("Galaxy"), a contractor for a project undertaken by 3480 Third Avenue Realty, LLC (Complaint ¶ 4), and for a project undertaken by the New York City Department Housing Preservation and Development

2

(the "City") (Complaint ¶ 11), and performed work for McAlpine Construction Co. Inc. ("McAlpine") on a project for Walgreens (Complaint ¶ 19-21). It further alleged that the Union sent communications to Galaxy, the City and McAlpine containing false statements concerning Allstate's payment of area labor standards (Complaint ¶ 5-9, 12-16, 19-23), that the Union Defendants have written letters for the purpose of dissuading other businesses, including 3480 Third Avenue Realty, LLC, Galaxy General Contracting, and the New York City Department of Housing Preservation and Development, from doing business with Allstate (Complaint ¶¶ 5, 9, 12, 13); that the Union Defendants have "disseminat[ed] disparaging leaflets objecting to Allstate Interiors, Inc. working in the community" (Complaint ¶ 19); have "cast[] shame" on Walgreens, the future tenant of a site on which Defendants were passing the leaflets for "desecration of the American way of life" (Complaint ¶ 20); and on those leaflets "further name[d] McAlpine Construction Co. Inc. as the contractor, solely for the purpose of causing it public scorn and humiliation" (Complaint ¶ 21), giving rise to causes of action (1) through (5) for tortuous interference with prospective contractual relations, and for (6) injurious falsehood, (7) libel, and (8) prima facie tort.

The instant motion to remand was marked fully submitted on June 2, 1010.

**Removal of This Lawsuit Was Proper**

Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, provides for preemption in this action. The U.S. Supreme Court has held that federal law, rather than state or local law, governs actions for damages that are based on peaceful union secondary activities. See Teamsters, Local 20 v. Morton, 377 U.S. 252, 261 (1964) (explaining that "state law has been displaced by § 303" in that area). As the Supreme Court in Morton elucidated, "this is an area of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." Id. (internal citation and quotation omitted). Decisions after Morton have held that "cases involving Section 8(b)(4) [29 U.S.C. § 158(b)(4)] are removable." See, e.g., Ethridge, 861 F.2d at 1400 n. 7 ("cases involving section 8(b)(4) are removable, see 29 U.S.C. § 187"); Smart, 562 F.3d at 808 (7th Cir. 2009) ("we hold therefore that section 187(b) completely preempts state-law

claims related to secondary boycott activities described in section 158(b)(4); it provides an exclusive federal cause of action for the redress of such illegal activity.") (emphasis in original).

Section 303 provides a private right of action for conduct that violates Section 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4). Section 8(b)(4) defines an unfair labor practice in this particular context as follows:

> It shall be an unfair labor practice for a labor organization . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is ... (B) forcing or requiring any person ... to cease doing business with any other person.

Section 8(b)(4) prohibits labor organizations from using threats, coercion, or restraint to interfere with the business relationships of employers engaged in commerce for the purpose of causing the employer to cease doing business with any other person. Such conduct has been labeled a "secondary boycott" or "secondary picketing" because it is not aimed at the primary employer (here, Allstate), but rather, is directed "to

5

persuad[ing] the customers of the secondary employer to cease trading with him in order to force him to cease dealing with, or to put pressure upon, the primary employer." NLRB v. Retain Store Employees Union, 447 U.S. 607, 612 (1980) (quoting NLRB v. Fruit Packers, 377 U.S. 58, 63 (1964)).

In its Motion for Remand, Allstate characterizes its primary complaint against the union as "tacitly threatening" parties including "prospective developers, general contractors and project sponsors ... against hiring Plaintiff for construction jobs." See Memorandum of Law in Support of Plaintiff's Motion to Remand (the "Motion"), p. 5. As such, the conduct complained of in this lawsuit falls within the purview of section 8(b)(4). The Union Defendants were a "labor organization" and its agent, as is alleged in the Complaint, and Allstate, is an "employer engaged in commerce". What has been alleged is secondary activity, namely, that the Union allegedly threatened, coerced and restrained general contractors and others who might potentially employ Allstate to perform construction work in order to force or persuade them to cease doing business with Allstate. The Complaint alleges secondary activity by the Union of the sort that courts have found to be preempted and removable. See, e.g., Ethridge, 861 F.2d at 1400

6

n. 7; Smart, 562 F.3d at 808. The Second Circuit has also held that section "303 pre-empts state law in the area of secondary activities." See Iodice v. Calabrese, 512 F.2d 383, 390 & fn. 1 (2d Cir. 1975); Monarch Long Beach v. Soft Drink Workers, Local 812, 762 F.2d 228 (2d Cir. 1985) (upholding preemption of state law claim by Section 303 in context of secondary boycott activity by union).

**The "Well Pleaded Complaint Rule" Does Not Control Propriety of Removal Here**

The bulk of the cases cited by Allstate consist in "generic" cases setting forth rules involving removal generally. They arise for the most part under circumstances factually distinct from those of this case. It is the specialized context in which this case arises, allegations by Allstate of secondary boycott activity by the Union, that confers complete preemption under Section 303 and conveys jurisdiction on this Court. The gravamen of this complaint alleges "secondary boycott" activity by the Union falling within the coverage of section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4) (Section 303).

Allstate's references in its Motion for Remand to the "Well-Pleaded Complaint Rule" (see, e.g., Motion, at pp. 7-9) are unavailing. In circumstances such as here where the allegations give rise to a federal claim subject to complete preemption, the Court properly "recharacterizes" the complaint as stating a federal claim, despite what is stated on the face of the pleading.

A plaintiff may not avoid removal by artful pleading which "omit[s] to plead necessary federal questions in a complaint." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 (1983). The artful pleading doctrine "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." BIW Deceived v. Local S6, Indus. Union o/Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir. 1997) (upholding propriety of removal by union based on complete preemption and denying motion for remand), citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n. 2 (1981) (explaining that in an appropriate case "the removal court will seek to determine whether the real nature of the claim is

8

federal, regardless of plaintiff's characterization"). As elaborated in the BIW case:

> [A] plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum. If the claim appears to be federal in nature - that is, if it meets the applicable test for one that arises under federal law - then the federal court must recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiffs professed intent to pursue only state-law claims.

BIW Deceived, 132 F.3d at 831 (internal citations omitted).

This is recognized and affirmed in other portions of the cases Allstate cites in its Motion for Remand. See e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) ("There does exist, however, an 'independent corollary' to the well-pleaded complaint rule ... known as the 'complete pre-emption' doctrine." (quoting Franchise Tax Bd., 463 U.S. 1, 22). "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). "Once an

9

area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. (citing Franchise Tax Bd., 463 U.S. at 24).

Courts have made clear that "interference with prospective economic advantage and contractual rights claims are preempted by section 303 of the LMRA." San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters, 125 F.3d 1230, 1235 (9th Cir. 1997). See also Second Circuit cases Iodice, 512 F.2d at 390 & fn. 1 (holding "303 pre-empts state law in the area of secondary activities"); Monarch, 762 F.2d 228 (upholding preemption of state law claim by Section 303 in context of secondary boycott activity by union). Allstate's claims for Tortious Interference with Prospective Contractual Relations (causes of action one through five) and Prima Facie Tort (eighth cause of action), which arise from Defendants' alleged secondary boycott activities, are thus completely preempted by Section 303 of the LMRA, and this Court has original jurisdiction over those claims. The Court may exercise supplemental jurisdiction over Allstate's other state law claims pursuant to 28 U.S.C. § 1367(a). Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8-9 &

fn. 3 (2003), has now clarified that complete preemption is a generally applicable doctrine that permits removal whenever Congress intended that federal law provide the exclusive cause of action. Id.; see also Morton, 377 U.S. at 258-261.

Based on allegations similar to those alleged here, state lawsuits have been properly removed to federal court. For example, in Alpha Theta, the Court held:

> Against that legal backdrop, the Court must determine if the conduct at issue here falls within the purview of Section 8(b)(4). It is undisputed that defendant is a "labor organization" and plaintiff is an employer engaged in commerce for purposes of the statute. Moreover, defendant has engaged in picketing and related conduct (1) to discourage plaintiff from doing business with Marquise, and (2) to persuade plaintiff's members and potential members "to cease patronizing plaintiff ... unless Plaintiff complied with Defendant's demands." Complaint at pp. 3.15, 3.16. The complaint therefore alleges secondary activity that courts have found to be completely preempted and removable. See, e.g., Ethridge, 861 F.2d at 1400; Smart, 562 F.3d at 808.

Alpha Theta, 2009 U.S. Dist. Lexis 92407 at *6-7.

In Adobe, the Court ruled:

> [T]he Court concludes that Adobe's claims for intentional interference with existing and prospective

11

>contractual relations are completely preempted by § 303 of the LMRA. This complete preemption confers original jurisdiction on this Court, and this action was properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

Adobe at p. 9.

State law tortious interference claims against union secondary boycotts are exclusively governed by Section 303 of the LMRA, even if they arise from the same facts that support a parallel defamation claim. San Antonio Community Hospital v. Carpenters, 125 F.3d 1230, 1235 (9th Cir. 1997), citing Teamsters v. Morton, 377 U.S. at 260-261. The presence of a state law defamation claim will not defeat federal jurisdiction over a parallel unfair labor practice claim implicating commerce. See Linn v. Plant Guard Workers, 383 U.S. 53, 66 (1966). The Court properly has jurisdiction over the other claims asserted in the Complaint for defamation based on pendent jurisdiction. Allstate's claims for Tortious Interference with Prospective Contractual Relations (causes of action one through five) and Prima Facie Tort (eighth cause of action), which are based on the same allegations, are preempted, and removal is proper.

**Garmon Preemption Is Not The Basis Of Removal**

Allstate's Motion for Remand has referred to so called "<u>Garmon</u> preemption" and cases that have discussed it. <u>See</u> Motion at 12-13. However, the Union Defendants have contended that Allstate's claims for tortious interference and prima facie tort are preempted by the exclusive private right of action set forth in Section 303 rather than "<u>Garmon</u> preemption," as Allstate misleadingly suggests in its Motion. The policy rationale behind "<u>Garmon</u> preemption" is to protect the primary jurisdiction of the National Labor Relations Board ("NLRB") with respect to areas of exclusive NLRB jurisdiction. <u>See</u> <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236, 242-244 (1959). Section 303 was specifically designed to give parties a separate and exclusive private right of action under federal law for damages actions based on peaceful union secondary activities. <u>See</u> <u>Morton</u>, 377 U.S. at 261 (1964) (explaining that "state law has been displaced by § 303" in that area); <u>Smart</u>, 562 F.3d at 804-809.

The distinction between "<u>Garmon</u> preemption" and the complete preemption that applies under Section 303 of the LMRA, the latter conveying jurisdiction with this Court, is set forth cogently in the <u>Smart</u> case. <u>See</u> <u>Smart</u>, 562 F.3d at 804-809. In <u>Smart</u>, the Seventh Circuit held that "<u>Garmon</u> preemption"

13

complete preemption based on Section 303 are distinct as a legal matter, with differing implications for a jurisdictional analysis.

For the most part, the cases cited by Allstate in the section of their Motion addressing "Garmon preemption" do not reference Section 303. This includes, for example, TKO Fleet Enterprises, Inc. v. District 15, 72 F.Supp.2d 83 (E.D.N.Y. 1999), which does not analyze Section 303 and its related preemption doctrine in any fashion. Three other district court cases cited by Allstate in the "Garmon" section of their Motion herald from district courts in Illinois - Empress River Casino Corp. v. Local Unions No.9 & 176, Int'l Brotherhood of Electrical Workers, 1994 WL 262075, at *4 (N.D. Ill. 1994) (an unpublished case), Lockport Well & Pump, Inc,. v. International Union of Operating Engineers, 708 F. Supp. 178 (N.D. Ill. 1989), and Pitchford v. Aladdin Steel, Inc., 828 F. Supp. 610 (S.D. Ill. 1993). These cases may well have been superseded by the subsequent 2009 decision by the Seventh Circuit in Smart, 562 F.3d at 808.

In Hayden v. Reickerd, 957 F.2d 1506 (9th Cir. 1991), cited by Allstate, an employee union steward brought suit

14

against his employer and its management in state court for battery and retaliation under state common law, alleging that his employer had retaliated against him because of his union activities. The employers removed the action to federal court on grounds that it was preempted by Section 301 of the LMRA, not Section 303. However, the Court ruled there was no Section 301 preemption on the facts presented. Hayden, 967 F.2d at 1508-09. The employer in Hayden subsequently attempted to invoke "Garmon preemption" as a "fall-back" device to maintain federal jurisdiction and was rejected. Id. at 1511-12.

Allstate also cited Ethridge, 861 F.2d 1389, to support its argument that "Garmon preemption" does not supply federal removal jurisdiction. The Union Parties have not disagreed concerning that implication of "Garmon preemption" but contend that Garmon is the relevant doctrine that applies here. Moreover, Ethridge goes on to point out that "cases involving Section 8(b)(4) [29 U.S.C. § 158(b)(4) or Section 303] are removable." Id. at 1400 n. 7. This is because Section 303 provides an exclusive private right of action. Smart, 562 F.3d at 804-809.

15

Because Garmon preemption is not the basis of removal here, the removal under Section 303 was proper. Allstate's motion to remand on the basis of Garmon is denied.

## Conclusion

Based on the conclusions set forth above, the motion of Allstate to remand and for attorney's fees and costs is denied.

It is so ordered.

**New York, NY**
**September 4, 2010**

_____
ROBERT W. SWEET
U.S.D.J.